Leonard H. Sandler, J.
The somewhat unusual facts of this
case confront this court with the troublesome problem of determining which of two parties, both innocent of any purposeful wrongdoing, should bear the burden of a loss caused by the dishonesty of one who is not before the court and is not likely to be responsive to the remedies of civil action.
The plaintiff is a corporation engaged in the sale of furniture, furnishings and carpetings. The defendant is a restaurant.
Sometime before the events in issue here, the defendant’s principal, Gene Schoor, met and became friendly with one Eobert De Quintal, a salesman for the plaintiff, who represented falsely that he was a sales manager.
De Quintal became a regular patron of the restaurant, eating there virtually every day and using it for business entertainment.
A time came when De Quintal, now very friendly with Schoor, proposed to Schoor that he allow him to obtain new carpeting for the restaurant, payment for which would be made by allowing De Quintal credit at the restaurant up to an equivalent value. 'Schoor agreed, the carpet was installed and De Quintal *505 was permitted to consume without payment food and drink totaling $1,003.55, at which time he disappeared.
Shortly thereafter, the defendant received from the plaintiff a bill for the carpeting, which with sales tax and freight charges, amounted to $1,156.23. Schoor refused to pay, and this lawsuit followed.
Preliminarily, I have concluded, notwithstanding some elements of uncertainty in the evidence, that Schoor understood that he was purchasing carpeting from De Quintal individually, and not as an employee of the defendant, and that Schoor further believed that he was acquiring something which De Quintal had the right to sell for his own account.
The applicable rule, with exceptions not here relevant, is that a buyer can acquire only such title as the transferor had a power to transfer. (50 N. Y. Jur., Sales, § 74; Uniform Commercial Code, § 2-403.) Under the facts as found here, De Quintal was a thief who had neither title nor power to convey title. (See Phelps v. McQuade, 220 N. Y. 232; Consumers Ice Co. of Buffalo v. Webster, Son & Co., 32 App. Div. 592.)
It is equally clear that the plaintiff, upon learning of what was in essence a conversion, had the right to replevy the carpeting, or in lieu thereof, could sue in quasi contract for the value of the property at the time of the conversion. (See 50 N. Y. Jur., Restitution and Implied Contracts, § 23; Sage v. Shepard & Morse Lbr. Co., 4 App. Div. 290, affd. 158 N. Y. 672; Manhattan Egg Co. v. Seaboard Term. & Refrigeration Co., 137 Misc. 14.)
The critical problem here is to determine how to fix the value of the property under the circumstances presented.
In considering the appropriate measure of recovery I have been struck by some apparent contradictions in the rules which have evolved for recovery in quasi contract.
Most obviously, it is a familiar principle that the law of restitution rests upon the cornerstone of unjust enrichment; yet it is firmly established that one who has paid full value to a thief, and thus has not benefited substantially if at all, may still be answerable to the owner. (See 50 N. Y. Jur., Restitution and Implied Contracts, §§ 5, 6, 23.)
The authors of the Restatement of Restitution, addressing the question of recovery where the value of the loss to the plaintiff differs from the value of the benefit to the defendant, advanced the principle that the measure of restitution should be determined by the tortiousness of the defendant, or the negligence or other fault of each of the parties. The following *506 rules are set forth (p. 596): “If the defendant was tortious in his acquisition of the benefit he is required to pay for what the other has lost although that is more than the recipient benefited. If he was consciously tortious in acquiring the benefit, he is also deprived of any profit derived from his subsequent dealing with it. If he was no more at fault than the claimant, he is not required to pay for losses in excess of benefit received by him and he is permitted to retain gains which result from his dealing with the property.”
The facts of the instant case clearly fall within the first of the three categories — a situation in which the defendant was tortious in his acquisition of the property, but not consciously so, and should be required to restore that which plaintiff lost. Indeed application of the above rules to the instant case confirms the basic soundness of the Restatement approach.
•Surely it would be unfair to place the greater part of the loss on the plaintiff by limiting his recovery to the actual benefit to the defendant in a situation that was primarily caused by the negligence or gullibility of the defendant in accepting without inquiry the suspicious proposal that was made to him.
But it would be equally unjust to permit the plaintiff to recover, in addition to its actual loss, a profit from a deal engineered by a dishonest employee acting in his own interest and which would never have been entered into if the defendant thought it would have to pay cash.
The soundest result under the facts, and the one unmistakably indicated by the applicable rule, is to make the plaintiff whole — permit it to recover the cost to it of the carpeting, the sales tax and freight charges.
The total cost established by the record is $959.20, and judgment accordingly is to be entered for that amount, with interest from February 6, 1970.