OPINION OF THE COURT
Edward J. Greenfield, J.
Plaintiff moves for an order pursuant to CPLR 3212 (a) and (c) granting summary judgment on the third cause of action in the amended complaint alleging that Steve M. Ostrer and Benjamin Ostrer (collectively the Ostrer brothers), as directors and officers of Horsemen’s Sales Co., Inc. misappropriated and converted $49,002 to their own use.
Plaintiff had consigned five horses to Horsemen’s Sales to be sold at auction at the August 1985 yearling sales at Saratoga Springs. The sale, after deduction of commissions and expenses, netted $49,002. The proceeds of the sale were never remitted to plaintiff.
*213 On October 7, 1986, plaintiff was awarded summary judgment against Horsemen’s Sales and a judgment in the amount of $54,514.73 was entered against that corporation. To date plaintiff has not been paid.
Plaintiff now seeks an order holding the individual Ostrer brothers liable on the ground that they "fraudulently, wrongfully and unlawfully and in violation of their trust and fiduciary responsibilities * * * misappropriated and converted the net proceeds of sale of $49,002 for uses other than payment, as legally required to plaintiff.”
The individual defendants contend they cannot be held personally responsible for the defaults of the corporation. While that is the general rule, a corporate officer or director may be held personally liable for conversion or misappropriation of trust funds. (Hinkle Iron Co. v Kohn, 229 NY 179; Admiral Corp. v Cohen, 68 Misc 2d 687.) This is true whether or not the individual officer or director was acting for the corporation, so long as he participated in the act. (Ingram v Machel & Jr. Auto Repair, 148 AD2d 324; Fleck v Perla, 40 AD2d 1069, 1070.) There need be no showing of tortious intent or bad faith. (Passaic Falls Throwing Co. v Villeneuve-Pohl Corp., 169 App Div 727.)
The question, then, is whether the auction proceeds are to be treated as tantamount to trust funds. Under the consign- or’s contract, the net proceeds of the auction received were to be remitted within 45 days. While there was no requirement that the proceeds be segregated in a separate account, and cash is fungible, the proceeds were not to be used for general corporate purposes, but to be turned over to plaintiff, as consignor. According to the contract, the auctioneer was to receive the proceeds of the sale for the consignor’s account. The requirement to "remit” was something more than an obligation to pay a debt owed. "Where money or property is entrusted to such an agent for a particular purpose, it is impressed by law with a trust in favor of the principal until it has been devoted to such purpose”. (Air Traffic Conference v Air Transp. Assn., 87 Misc 2d 151, 154.) The auctioneer held the proceeds as a bailee. It was a mere conduit for transmission. Instead, the individual defendants caused the proceeds from the sale of plaintiff’s horses to be used to pay bills, salaries and general obligations of the corporation, including their own personal out-of-pocket expenses, rather than turning the funds over to plaintiff.
*214 It appears that the corporation was financially troubled and defendants decided to divert moneys earned from the sale of plaintiffs horses to satisfy outstanding corporate obligations, in an effort to keep the corporation afloat. The brothers’ reliance on "the [accepted] general practice” of auctioneers not to segregate the funds they take in from the sale of property does not excuse the Ostrer brothers from failing to account for moneys received at auction sales. The auctioneer is not in an ordinary debtor-creditor relationship such as exists in the ordinary course of business between a buyer and a seller. An auctioneer, as an agent of the seller (Cristallina S. A. v Christie, Manson & Woods Intl., 117 AD2d 284, 292; City of New York v Union News Co., 169 App Div 278; Matter of Premier Container Corp. [Leinwand], 95 Misc 2d 859, 866) is in a fiduciary position, and has a duty to turn over the proceeds of the auction sale in full. (Matter of Creveling & Son Corp., 259 App Div 351, 352-353, affd 283 NY 760.) Even if there had been no written agreement, the relationship of principal and agent would call for the impressing of a constructive trust upon funds received by the agent from sale of the property entrusted to him. (Elliott v Bumb, 356 F2d 749, 754, cert denied sub nom. Schutzbank v Elliott, 385 US 829.)
As reiterated in Fuller v Fasig-Tipton Co. (587 F2d 103, 107), which also involved claims against an auctioneer arising out of the sale of horses at the Saratoga yearling sales, upon sale of the horses, the proceeds belong to the owner, and the auctioneer is obligated to pay to the owner the net proceeds for their account. Only the owner-principal can authorize any other application of the proceeds. It is of no moment that defendants did not personally benefit from the diversion. They directed the conversion of the funds.
Accordingly, the court finds as a matter of law that the individual defendants are liable to plaintiff for the conversion of the proceeds from the sale of plaintiff’s horses, together with interest.
Plaintiff’s motion for summary judgment on the third cause of action of the amended complaint is granted.